1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11   DANNY COOK,                          )   Case No. EDCV 08-259 JC
                                          )
12                        Plaintiff,      )
                                          )   MEMORANDUM OPINION AND
13             v.                         )   ORDER OF REMAND
                                          )
14                                        )
     MICHAEL J. ASTRUE,                    )
15   Commissioner of Social               )
     Security,                            )
16                                        )
                          Defendant.      )
17   _____

18

19   **I.   SUMMARY**

20       On March 4, 2008, plaintiff Danny Cook ("plaintiff") filed a Complaint

21   seeking review of the Commissioner of Social Security's denial of plaintiff's

22   application for benefits.  The parties have filed a consent to proceed before a

23   United States Magistrate Judge.

24       This matter is before the Court on the parties' cross motions for summary

25   judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

26   Court has taken both motions under submission without oral argument.  See Fed.

27   R. Civ. P. 78; L.R. 7-15; March 7, 2008 Case Management Order, ¶ 5.

28   ///

1

1    Based on the record as a whole and the applicable law, the decision of the

2 Commissioner is REVERSED AND REMANDED for further proceedings

3 consistent with this Memorandum Opinion and Order of Remand.

4 **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5 **DECISION**

6    On January 19, 2006, plaintiff filed an application for Supplemental

7 Security Income benefits.  (Administrative Record ("AR") 27, 28, 75-78).

8 Plaintiff asserted that he became disabled on March 31, 1991, due to seizures, the

9 fact that he was missing his right eye and part of his left shoulder, headaches, and

10 being shot in the head.  (AR 86).  The ALJ examined the medical record and heard

11 testimony from plaintiff (who was represented by counsel) and a vocational expert

12 in November 2007.  (AR 7-26).[1]

13    On November 29, 2007, the ALJ determined that plaintiff was not disabled

14 through the date of the decision.  (AR 3, 32-39).  Specifically, the ALJ found:

15 (1) plaintiff suffered from the following severe impairments:  History of gunshot

16 wound to the left shoulder and head with blindness in the right eye, seizure

17 disorder, headaches, and memory problems (AR 34); (2) plaintiff's impairments or

18 combination of impairments, did not meet or medically equal one of the listed

19 impairments (AR 34); (3) plaintiff retained the residual functional capacity to

20 perform simple repetitive tasks, with the following limitations:  (i) he would miss

21 work one or two times per month due to his seizures; (ii) he could only

22 occasionally use his left arm with no full extension of the left arm above his head;

23 and (iii) he had vision only in the left eye (AR 34); (4) plaintiff could not perform

24 his past relevant work (AR 38); (5) plaintiff could perform other work that exists

25 in significant number in the national economy (AR 38-39); and (6) plaintiff's

26

27    [1]Although the transcript of the hearing and the ALJ's decision reflect that the hearing

28 took place in November *2006*, the ALJ considered records dated *2007* during the hearing, and
issued a decision on November 29, 2007.  Accordingly, this Court presumes that the year of the
hearing was 2007 rather than 2006.

1  statements concerning the intensity, persistence and limiting effects of his

2  symptoms were not entirely credible (AR 35).

3  The Appeals Council denied plaintiff's application for review.  (AR 3-5).

4  **III.   APPLICABLE LEGAL STANDARDS**

5  **A.   Sequential Evaluation Process**

6  To qualify for disability benefits, a claimant must show that he is unable to

7  engage in any substantial gainful activity by reason of a medically determinable

8  physical or mental impairment which can be expected to result in death or which

9  has lasted or can be expected to last for a continuous period of at least twelve

10  months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.

11  § 423(d)(1)(A)).  The impairment must render the claimant incapable of

12  performing the work he previously performed and incapable of performing any

13  other substantial gainful employment that exists in the national economy.  Tackett

14  v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

15  In assessing whether a claimant is disabled, an ALJ is to follow a five-step

16  sequential evaluation process:

17  (1)   Is the claimant presently engaged in substantial gainful activity?  If

18  so, the claimant is not disabled.  If not, proceed to step two.

19  (2)   Is the claimant's alleged impairment sufficiently severe to limit

20  his ability to work?  If not, the claimant is not disabled.  If so,

21  proceed to step three.

22  (3)   Does the claimant's impairment, or combination of

23  impairments, meet or equal an impairment listed in 20 C.F.R.

24  Part 404, Subpart P, Appendix 1?  If so, the claimant is

25  disabled.  If not, proceed to step four.

26  ///

27  ///

28  ///

1     (4)    Does the claimant possess the residual functional capacity to

2            perform his past relevant work?[2]  If so, the claimant is not

3            disabled.  If not, proceed to step five.

4     (5)    Does the claimant's residual functional capacity, when

5            considered with the claimant's age, education, and work

6            experience, allow him to adjust to other work that exists in

7            significant numbers in the national economy?  If so, the

8            claimant is not disabled.  If not, the claimant is disabled.

9 Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th

10 Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

11     The claimant has the burden of proof at steps one through four, and the

12 Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262

13 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679

14 (claimant carries initial burden of proving disability).

15     **B.**    **Standard of Review**

16     Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

17 benefits only if it is not supported by substantial evidence or if it is based on legal

18 error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

19 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

20 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

21 mind might accept as adequate to support a conclusion."  Richardson v. Perales,

22 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

23 mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing

24 Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

25 ///

26

27

28     [2]Residual functional capacity is "what [one] can still do despite [one's] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. § 416.945(a).

4

1    To determine whether substantial evidence supports a finding, a court must

2    "'consider the record as a whole, weighing both evidence that supports and

3    evidence that detracts from the [Commissioner's] conclusion.'" Aukland v.

4    Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

5    953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

6    or reversing the ALJ's conclusion, a court may not substitute its judgment for that

7    of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

8  **IV.    FACTS**

9         **A.    Medical Evidence**

10    As early as 2005, plaintiff was prescribed Dilantin and phenobarbital for

11   seizure disorder, and had experienced grand mal seizures.  (AR 133, 137, 138,

12   157-58, 159, 160, 165, 167-68, 169-70, 176, 178, 182-83).  There is clinical

13   evidence of "bite marks" on plaintiff's tongue.  (AR 135).

14    In April 2005, plaintiff was treated on an emergency basis at Arrowhead

15   Regional Medical Center for "convulsions" and "hypopotassemia" (low levels of

16   potassium in the body).  (AR 122-35).

17    Between January 2006 and May 2007, plaintiff's seizure medication was

18   reduced to address side effects (*e.g.*, sleepiness), but the change resulted in

19   increased seizures.  (AR 36, 165, 165-83).

20    On March 3, 2006, Dr. Kalmar, a reviewing consultant, completed a

21   physical residual functional capacity assessment, in which he opined that plaintiff

22   (i) was limited to occasional climbing of ladder/rope/scaffolds (AR 150); (ii) was

23   limited to "occasional" overhead reaching with the left upper extremity; (iii) had

24   limited depth perception and field of vision, and should avoid dangerous

25   environments and heavy machinery due to his "blind right eye"; and (iv) should

26   avoid concentrated exposure to extreme cold, extreme heat and hazards

27   (machinery, heights, etc.).  (AR 148-55).  At the time of this assessment, no

28   treating or examining source statements were present in plaintiff's Social Security

1 file.  (AR 154).

2     In a case analysis dated October 11, 2006, Dr. Hartman, another reviewing

3 consultant, concurred with the original residual functional capacity assessment,

4 with "seizure precautions including driving, working at heights or around

5 hazards."  (AR 163).

6     In a letter dated February 23, 2007, Dr. Luciano, plaintiff's treating

7 physician, stated the following:

8     [Plaintiff] is a patient of mine at the Westside Clinic in San

9     Bernardino, CA.  He has a history of seizure disorder and short term

10     memory problems secondary to a gun shot wound to the head in 1991.

11     He has been having uncontrolled seizures as of lately, and is currently

12     being followed by neurology.  He was recently hospitalized for

13     uncontrolled seizures.  Clinically, he should be disabled for at least

14     one year.

15 (AR 184).

16     On May 7, 2007, Dr. Keiderling, who worked at the Arrowhead Regional

17 Medical Center, prescribed an increase in plaintiff's medication in response to

18 plaintiff's reports that he had been hospitalized for three days for "uncontrolled

19 seizures."  (AR 165).

20     **B.**    **Plaintiff's Statements and Testimony**

21     In a seizure questionnaire dated February 1, 2006, plaintiff stated that:

22 (i) he had been having seizures since 1991 (AR 92); (ii) he experienced seizures

23 four or five times a month (AR 92); (iii) during the seizures he would lose

24 consciousness, have convulsions, bite his tongue, and lose bladder control (AR

25 92); (iv) the seizures would last between 5 to 10 minutes, and afterwards plaintiff

26 would feel like he had "been run over by a bus" and that "all [his] muscles

27 ache[d]" (AR 92); (v) it took four to five days after a seizure before plaintiff was

28 able to resume normal activities (AR 92); (vi) he was taking Dilantin and

6

1  phenobarbital for seizures (AR 93); (vii) he always took his medication (AR 93);

2  and (viii) the medication moderately controlled plaintiff's seizures (AR 93).

3      At the November 3, 2006, administrative hearing, plaintiff testified:   He

4  (i) suffered from seizures and migraine headaches (AR 12, 15); (ii) was right-

5  handed (AR 12); (iii) couldn't see and knocked things over because he was blind

6  in his right eye (AR 12, 16, 19); (iv) couldn't lift anything with his left arm, and

7  was unable to raise his left arm above his head because of a gunshot wound in his

8  shoulder (AR 12); (v) was recently prescribed "a whole bunch of medicine" in an

9  attempt to control his seizures (AR 13); (vi) became drowsy and sleepy from his

10 seizure medication, which forced him to lay down for four hours at a time after he

11 took it (AR 13, 17-18); (vii) experienced an average of three seizures a month (AR

12 14); (viii) changed medication a few months before the hearing; (ix) had "a lot of

13 seizures," at that time, and at one point had "14 seizures in one day" (AR 14);

14 (x) had been hospitalized for seizures (AR 14); (xi) needed three days to a week to

15 recuperate after having a seizure because his "body hurt[] so bad" (AR 14, 22);

16 (xii) experienced mood swings (AR 15); (xiii) had problems with concentration

17 and memory (AR 16, 17, 22, 23-24); (xiv) watched television when he was not

18 sleeping during the day (AR 18); (xv) would not leave the house often because he

19 feared falling during a seizure and being robbed while unconscious (AR 20);

20 (xvi) had continually had his medication changed during the two years prior to the

21 hearing, "to get the right level" for controlling his seizures (AR 20-21); and (xvii)

22 suffered from worse seizures in the last year (AR 21).

23      **C.    The Vocational Expert's Testimony**

24      During the November 3, 2006 hearing, the ALJ's examination of the

25 vocational expert consisted of the following:

26      Q:     Ms. Fioretti, let's suppose there's someone with a high school

27             education, not illiterate, but is limited to simple, repetitive

28             tasks, and missing work one to two times a month.

| | | |
|---|---|---|
| 1 | A: | Was that absent two times a month? |
| 2 | Q: | One to two times a month.  And only occasionally [sic] use of |
| 3 | | the left arm, and does not have full extension of the left arm |
| 4 | | above head, and vision only in the left eye.  As far as – okay, |
| 5 | | with those limitations, can you identify any unskilled jobs that |
| 6 | | can be done? |
| 7 | A: | There would be work as a cleaner in housekeeping, DOT code |
| 8 | | 323.67-014.  That work is light, unskilled, SVP-2.  Regionally, |
| 9 | | there are 6,000 positions, nationally, there are in excess of |
| 10 | | 70,000 positions.  There would be work as an inspector and |
| 11 | | packager, DOT code 559.687-074.  That work is light, |
| 12 | | unskilled, SVP-2.  Regionally, there are 1,000 positions, |
| 13 | | nationally, there are 19,000 positions. There would be work as |
| 14 | | a Cashier II, DOT code 211.462-010.  The work is light, |
| 15 | | unskilled, SVP-2.  Regionally, there are 5,000 positions, |
| 16 | | nationally, in excess of 100,000 positions. |
| 17 | Q: | And your testimony is consistent with the DOT. |
| 18 | A: | Yes. |
| 19 | Q: | And if the individual would have to lie down during the work |
| 20 | | hours, that would eliminate these and all other jobs.  Right? |
| 21 | A: | Yes. |
| 22 | (AR 25). | |

**D.    The ALJ's Decision**

In his November 29, 2007 decision the ALJ summarized the medical evidence, the statements and testimony of plaintiff, and the testimony of the vocational expert, and made the following findings (among others):

Plaintiff's testimony regarding the frequency, duration and effects of his subjective symptoms were not entirely credible.  (AR 35-36, 37, 38).  Plaintiff's

1    claims regarding his seizure episodes were unsupported by the medical evidence

2    and the condition "appear[ed] to be adequately controlled when [plaintiff]

3    maintained therapeutic levels of medication with only occasional breakthrough

4    seizure episodes." (AR 37).  Although the ALJ deemed it reasonable that plaintiff

5    could have some memory problems and mood swings secondary to his physical

6    condition, he concluded that the medical evidence did not support the existence of

7    any significant problems resulting from such conditions.  (AR 36).  Nonetheless,

8    the ALJ considered plaintiff's alleged memory problems and mood swings in his

9    determination of plaintiff's residual functional capacity, characterizing them as

10   "mild problems."  (AR 36).

11          The ALJ gave no weight to the opinions expressed in Dr. Luciano's letter,

12   stating as follows:

13          I have considered the letter from claimant's doctor, Dr. Michael

14          Luciano, indicating the claimant has a history of seizure disorder and

15          short term memory problems secondary to a gun shot wound to the

16          head in 1991, with uncontrolled seizures and that [plaintiff] should be

17          disabled for at least one year.  [citation omitted].  However, I find Dr.

18          Luciano has not provided any laboratory or clinical findings to

19          support his conclusory statement.  In fact, I find his statements are not

20          supported by the overall medical evidence and his opinions regarding

21          disability are given no probative weight.  At any rate, medical source

22          opinions that the claimant is "disabled" are not determinative of

23          disability.  While the opinions from treating and examining sources

24          are considered, the final responsibility for determining the issue of

25          disability is reserved for the Social Security Administrations (20 CFR

26          416.927).

27   (AR 37).

28   ///

1   The ALJ gave "significant weight" to the opinions of the state-agency

2   review examiners, finding their opinions "consistent with the overall medical

3   evidence." (AR 37 (citing AR 148-55, 163)).[3]

4   The ALJ adopted the vocational expert's testimony, stating it was

5   "consistent with the information contained in the Dictionary of Occupational

6   Titles." (AR 39).

7   The ALJ determined that plaintiff retained the following residual functional

8   capacity: "[plaintiff could] perform simple repetitive tasks but he would miss

9   work one or two times per month due to his seizure disorder. He is limited to only

10  occasional use of the left arm with no full extension of the left arm above his head.

11  He has vision only in the left eye." (AR 34).

12  The ALJ concluded that plaintiff was "not disabled," based on the

13  vocational expert's testimony, and "[plaintiff's] age, education, work experience,

14  and residual functional capacity . . . ." (AR 39).

15  **V.   DISCUSSION**

16  **A.   A Remand Is Appropriate Because the ALJ Failed to Develop the**

17  **Record Regarding the Basis of the Treating Physician's Opinion**

18  **that Plaintiff Was Disabled**

19  The ALJ has an affirmative duty to assist the claimant in developing the

20  record at every step of the inquiry. Bustamante, 262 F.3d at 954; see also Webb v.

21  Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ has special duty to fully and

22  fairly develop record and to assure that claimant's interests are considered). The

23  ALJ's duty exists whether or not plaintiff is represented by counsel. Tonapetyan

24  v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). The duty "is triggered only when

25  there is ambiguous evidence or when the record is inadequate to allow for proper

26  ///

27

28  [3]The ALJ presumably referred to the opinions of Drs. Kalmar and Hartman. (AR 148-55, 163).

10

1  evaluation of the evidence."  <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir.

2  2001) (citation omitted).

3       Here, Dr. Luciano opined that clinically, plaintiff should be disabled for at

4  least one year.  As the ALJ correctly noted, the ultimate issue of disability is a

5  determination reserved to the Commissioner.  (AR 37) (citing 20 C.F.R.

6  § 416.927).  However, "because treating source evidence (including opinion

7  evidence) is important, if the evidence does not support a treating source's opinion

8  on any issue reserved to the Commissioner and the adjudicator cannot ascertain

9  the basis of the opinion from the case record, the adjudicator must make 'every

10  reasonable effort' to recontact the source for clarification of the reasons for the

11  opinion."  Social Security Ruling ("SSR") 96-5p.[4]  The ALJ expressly declined to

12  accept Dr. Luciano's opinion, at least in part, because  Dr. Luciano had not

13  provided any laboratory or clinical findings to support his statement.  This

14  indicates that the ALJ could not ascertain the basis for Dr. Luciano's opinion from

15  the case record and thus triggered the ALJ's duty to make "every reasonable

16  effort" to recontact Dr. Luciano for clarification of the reasons for this opinion.

17  The ALJ made no such effort.

18       The Ninth Circuit has determined that the ALJ may discharge his duty to

19  develop the record in several ways, including:  subpoenaing the plaintiff's

20  physician, submitting questions to the physician, continuing the hearing, or

21  keeping the record open after the hearing to allow supplementation of the record.

22  <u>Tonapetyan</u>, 242 F.3d at 1150 (citations omitted).  Contrary to defendant's

23  ///

24  ///

25

26       [4]Social Security rulings are binding on the Administration.  <u>See</u> <u>Terry v. Sullivan</u>, 903

27  F.2d 1273, 1275 n.1 (9th Cir. 1990).  Such rulings reflect the official interpretation of the Social
Security Administration and are entitled to some deference as long as they are consistent with the

28  Social Security Act and regulations.  <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1152 n.6 (9th Cir.
2007).

1  argument, simply asking plaintiff's counsel if the record could be closed at the end

2  of the hearing was insufficient.[5]

3  **V.      CONCLUSION**[6]

4        For the foregoing reasons, the decision of the Commissioner of Social

5  Security is REVERSED IN PART, and this matter is REMANDED for further

6  administrative action consistent with this Opinion.[7]

7        LET JUDGMENT BE ENTERED ACCORDINGLY.

8  DATED: August 26, 2009

9                                          /s/
                                    _____
10                                  Honorable Jacqueline Chooljian
                                    UNITED STATES MAGISTRATE JUDGE
11

12

13

14

15

16

17

18

19

20        [5]Defendant's reliance on Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) is
    misplaced.  (Defendant's Motion at 5).  Unlike here, the ALJ in Tidwell alerted the plaintiff that
21  the form submitted by a particular doctor was "inadequate," requested that plaintiff and her
    attorney make additional inquiry into the basis for the doctor's opinions, and left the record open
22  for supplemental medical records.  Tidwell, 161 F.3d at 602.

23        [6]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's
24  decision, except insofar as to determine that a reversal and remand for immediate payment of
    benefits would not be appropriate.

25
          [7]When a court reverses an administrative determination, "the proper course, except in rare
26  circumstances, is to remand to the agency for additional investigation or explanation."
    Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and
27  quotations omitted).  Remand is proper where, as here, additional administrative proceedings
    could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.
28  1989).